**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

BRIANNA FULTZ,

Plaintiff,

2:26-cv-4125

-vs-

SHOW-ME CHRISTIAN YOUTH HOME,

and

SHOW-ME CHRISTIAN YOUTH HOME FACILITIES, INC.,

Defendants.

## COMPLAINT

Brianna Fultz ("Plaintiff") brings this action against Show-Me Christian Youth Home and Show-Me Christian Youth Home Facilities, Inc. ("Defendants") under 18 U.S.C. § 2255 and related statutes. Because the two entities share a single address, a single registered agent, and a common enterprise, Plaintiff does not yet know which is the proper defendant, or whether both share responsibility for the conduct described below. Plaintiff alleges as follows:

## PARTIES

1. Plaintiff Brianna Fultz is an adult survivor of childhood abuse, forced labor, sexual abuse, retaliation, and institutional exploitation at Show-Me Christian Youth Home. She was born on December 19, 1994. She was placed at Show-Me when she was twelve years old and lived there from roughly 2007 until 2012.

2. The Defendants are two Missouri nonprofit corporations, both in good standing, that operate from the same address under the same registered agent (Chad Puckett, 24302 Mahin Road, La Monte, Missouri 65337):

(a) Show-Me Christian Youth Home, with its principal office at 24302 Mahin Road, La Monte, Missouri 65337-3223; and
(b) Show-Me Christian Youth Home Facilities, Inc., with its principal office at the same address.

3. Together, Defendants operated, owned, controlled, managed, staffed, funded, or benefited from the residential program where Plaintiff was placed as a child. They held Show-Me out to parents, courts, churches, donors, and the public as a safe Christian home for children who needed care, structure, education, discipline, and guidance. And at all relevant times they exercised practical control over the ordinary details of Plaintiff's life — where she lived, when she worked, whether she went to school, what she ate, how she was disciplined, what medication she received, what medical and mental-health care she could reach, and how much contact she had with her family and the world outside the program.

**JURISDICTION AND VENUE**

4. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under 18 U.S.C. § 2255 and related federal statutes. Section 2255 gives a civil remedy to a person who, while a minor, was the victim of certain federal offenses — including forced labor under 18 U.S.C. § 1589 and federal sexual-exploitation offenses — and who suffered personal injury as a result.

5. Venue is proper here because the events giving rise to this action occurred in Missouri, and because Defendants operated, owned, controlled, managed, staffed, funded, or benefited from the facility where Plaintiff was placed, controlled, exploited, and injured.

**FACTUAL ALLEGATIONS**

6. Plaintiff was a child when she entered Show-Me. She arrived with no adult judgment, no bargaining power, no money, no transportation, and no realistic way to refuse the conditions the adults imposed on her. For roughly five years she lived in a closed residential system where adults controlled every part of her day: her sleep, her food, her work, her schooling, her contact with her family, and even what account of life inside the program outsiders were allowed to hear. Defendants presented Show-Me as a Christian youth home. For Plaintiff it became something else — a place of control, fear, forced labor, retaliation, sexual abuse, medication, and isolation.

7. The home placed Plaintiff under Neil Becker and Kim Becker, who served as her house parents or adult supervisors. Neil Becker held direct authority over her, as did other adults who worked for, supervised, or acted on behalf of Defendants. This was not ordinary supervision. It was the power to assign her labor, punish her, ration her food, cut off her family, keep her from school, control her access to medical and mental-

health care, and decide whether she would be believed or punished when she reported abuse.

8. The work Defendants required of Plaintiff went far beyond the chores of an ordinary family home. She was also kept from school and denied classroom instruction so that she could work. This was compelled labor extracted from a child under institutional control — not the chores of a household, and not any form of vocational training. Beginning around age twelve, and under threat of punishment, she was made to perform punishing manual labor that served the institution, including:

(a) cutting, hauling, loading, unloading, and transporting timber for hours at a stretch, in winter conditions and other extreme weather;
(b) carrying logs so large she could barely manage one at a time, back and forth across a distance close to the length of a football field, for hours each day and often until after dark — as much as four hours a day on some days;
(c) repairing barbed-wire fencing;
(d) livestock, cattle, and property work, performed without proper safety or protective gear;
(e) outdoor labor in extreme heat without enough water; and
(f) punitive labor that sometimes began when she was awakened at around four in the morning.

9. Defendants did not run Show-Me as a family home; they ran it as a revenue-generating enterprise. On information and belief, and as discovery will show, Show-Me earned revenue from sources that included tuition and program fees, payments for the placement and care of the children, state or custodial funds, solicited donations and contributions, and the agricultural and farm products produced on its property. The unpaid labor of Plaintiff and the other children furthered that enterprise. It maintained the homes, grounds, vehicles, and property, kept the farm and agricultural operations running, and spared Defendants the wages of the paid workers they would otherwise have had to employ. The labor was extracted for Defendants' financial benefit and the operation of their business, not as the ordinary contribution of a child to a household.

10. The labor was enforced through fear. Defendants and their staff secured Plaintiff's obedience through punishment, physical abuse, food deprivation, isolation, loss of family contact, religious pressure, humiliation, and the ordinary terror a child feels when every meaningful part of her life rests in the hands of the adults demanding that she obey. When she resisted, fell short, or was accused of disobedience, she was

punished — by strict food restriction, by being forced to run outdoors in the snow in nothing but shorts and a T-shirt, by physical assaults and beatings, by prolonged isolation, and by the loss of contact with her family. All of it served a single purpose: to wear down her resistance until obedience became automatic.

11. The harm Defendants used and threatened to compel Plaintiff's labor was serious harm within the meaning of 18 U.S.C. § 1589(c)(2), which reaches any harm — physical or nonphysical, including psychological harm — serious enough, under all the surrounding circumstances, to compel a reasonable person in Plaintiff's position to perform or continue performing labor in order to avoid it. The harms Defendants imposed and threatened included psychological harm and fear, near-total isolation from her family, sleep deprivation from middle-of-the-night and overnight labor, the loss of food, hygiene, and privileges, and the constant and coercive monitoring of her body and conduct. For a child confined in a closed residential institution, dependent on Defendants for every necessity, and cut off from outside help, each of those harms was serious enough to compel her to perform the labor Defendants demanded.

12. That coercion carried special force because Plaintiff was a child in a religious residential program. The adults in charge wrapped their authority in spiritual terms, so that obedience felt mandatory and resistance felt dangerous, shameful, or sinful. The same structure made disclosure nearly impossible. A child in Plaintiff's position understood that challenging the adults in charge could cost her food, family, school, safety, medication, privileges, and any chance of being believed.

13. Beginning when Plaintiff was approximately twelve, Neil Becker groomed and sexually abused her, using the authority Defendants had given him over every part of her daily life. The abuse included sexualized comments, sexual touching of her breasts, voyeurism, and following her into bathrooms to watch her shower. He bit her body. He forced her to strip completely naked as punishment and beat her with a paddle while she was naked, becoming visibly aroused as he did so. And he forced her to perform oral sex.

14. The abuse did not come from a stranger beyond Defendants' reach; it happened inside the residential structure they built and controlled, in the very setting where they had taken custody of Plaintiff as a child. Some of it occurred in Kim Becker's presence, or in circumstances where she knew or should have known what was happening. And Plaintiff had no realistic way to escape it: she lived under the authority of the same adults who controlled her housing, food, labor, schooling, discipline, medication, family contact, and credibility.

15. Plaintiff reported the sexual and physical abuse. She told supervisory personnel, including Rachel Reynolds and Jessica Weber, and she told a therapist affiliated with or used by the program, identified to her as Marsha in Otterville, Missouri. Defendants did nothing meaningful to protect her. Neil Becker was not promptly removed from his custodial role over children. Instead, Plaintiff was punished, disbelieved, isolated, and subjected to intensified discipline for having spoken.

16. Plaintiff was also heavily medicated with psychotropic drugs, including Adderall, Abilify, Celexa, and Lithium. The medication did not function as care or protection. It became one more instrument of the institution's control over her body, her emotions, her speech, and her credibility.

17. The danger to Plaintiff cannot fairly be blamed on a single employee acting in perfect secrecy. Plaintiff reported the abuse. Other adults were present. The labor was performed in the open. The punishments were part of the program's culture, and the control of children was not an accident — it was how the institution operated. Defendants knew or should have known that the children in their care were being harmed. All the while, Defendants profited: Show-Me took in money, donations, funding, labor, and public goodwill from the residential program it ran and promoted, even as Plaintiff was being exploited within it.

18. Defendants' conduct caused Plaintiff lasting harm. She suffers from severe PTSD, trauma-related physical and bladder problems, attachment trauma, difficulty trusting others, instability in her relationships and her work, and the disruption of her education. The developmental trauma she endured as a child was later followed by substance abuse, now in remission, and by domestic-violence victimization in adulthood. Some of these injuries were apparent at the time. Others came into focus only later, once she had the distance, maturity, and life experience to understand what had been done to her.

19. What happened to Plaintiff was not one bad decision, one misunderstanding, or one isolated lapse in judgment. It was a system — one that took a vulnerable child, controlled her, used her labor, failed to protect her from sexual abuse, punished her for reporting it, medicated her, isolated her, and left her to carry the damage into adulthood.

20. Separate from their direct conduct, Defendants are liable as beneficiaries under 18 U.S.C. § 1589(b). Defendants knowingly benefited, financially and by receiving things of value, from their participation in a venture — the operation of Show-Me — that obtained the labor and services of Plaintiff and other children by the coercive means

described above. Defendants knew, or acted in reckless disregard of the fact, that the venture obtained that labor through force, coercion, serious harm, and a scheme that led the children to believe that refusal would bring serious harm. A violation of § 1589(b) is itself a violation of § 1589, and Plaintiff may recover for it under 18 U.S.C. § 2255.

21. Defendants are also vicariously liable for the conduct described in this Complaint. The staff, house parents, and other adults who controlled Plaintiff, compelled her labor, punished her, and subjected her to the treatment described above acted as Defendants' employees or agents and within the scope and course of that employment or agency. Defendants are responsible for their acts and omissions under the doctrine of *respondeat superior*.

## CLAIMS FOR RELIEF

### COUNT I
### CIVIL REMEDY FOR PERSONAL INJURY TO A MINOR
### 18 U.S.C. § 2255
### Predicate Violation: Forced Labor Under 18 U.S.C. § 1589

22. Plaintiff adopts the preceding paragraphs.

23. Plaintiff was a minor throughout the conduct described in this Complaint. Federal law forbids knowingly obtaining a person's labor or services by force or threats of force, by physical restraint or threats of physical restraint, by serious harm or threats of serious harm, by abuse of law or legal process, or by any scheme, plan, or pattern meant to make a person believe that refusing to work would result in serious harm. 18 U.S.C. § 1589.

24. Defendants obtained Plaintiff's labor and services while she was a minor. That labor included cutting timber; hauling logs so large she could barely carry one at a time; carrying those logs back and forth across a distance close to the length of a football field for hours a day and often until after dark; loading and unloading wood; repairing barbed-wire fencing; livestock and cattle work; property maintenance; outdoor labor in extreme weather; punitive early-morning labor; and other work that helped Show-Me operate.

25. Defendants obtained that labor through coercion — through punishment, physical abuse, food deprivation, institutional control, religious pressure, isolation, humiliation, loss of family contact, threats of consequence, and the simple inability of a child in a closed residential facility to refuse. Plaintiff reasonably believed that refusing

to work would bring serious consequences: punishment, physical harm, humiliation, isolation, food restriction, the loss of her family, exclusion from school, tighter control, and other harms that are serious to a child in institutional custody. That belief was reasonable, because punishment in fact followed resistance, and because the adults demanding the labor controlled every meaningful part of her life.

26. Defendants knew or should have known that Plaintiff's labor was being obtained through these coercive means, and they benefited from it financially and operationally, because the work of Plaintiff and other children reduced the need for paid adult labor and helped keep the institution running.

27. Plaintiff was therefore a victim of forced labor under 18 U.S.C. § 1589, and she suffered personal injury as a result. Under 18 U.S.C. § 2255, she is entitled to recover the damages the law allows, together with the costs of this action and reasonable attorney's fees.

## COUNT II
## CIVIL REMEDY FOR PERSONAL INJURY TO A MINOR
## 18 U.S.C. § 2255
### Predicate Violation: Sexual Exploitation and Abuse Under Federal Law

28. Plaintiff adopts the preceding paragraphs.

29. Plaintiff was a minor throughout the sexual abuse, grooming, exploitation, and institutional retaliation described in this Complaint. Neil Becker used his position as her house parent or adult supervisor to groom, control, and sexually abuse her while she was a child living in Defendants' residential program. The abuse included sexualized comments, sexual touching, voyeurism, forced nudity, sexualized physical punishment, and forced oral sex. It occurred in a custodial setting where Plaintiff could not realistically leave, refuse, seek outside help, or remove herself from Neil Becker's authority.

30. Defendants knew or should have known that Plaintiff was being sexually abused and exploited. She reported the abuse to supervisory personnel and to a therapist affiliated with or used by the program. Yet Defendants took no reasonable protective action. Instead, Plaintiff was punished, isolated, disbelieved, subjected to intensified discipline, and heavily medicated — while Defendants continued to benefit from the residential program in which she was controlled, exploited, silenced, and harmed.

31. Plaintiff suffered personal injury as a result of the sexual abuse, exploitation, institutional indifference, and retaliation described in this Complaint. Under 18 U.S.C. § 2255, she is entitled to recover the damages the law allows, together with the costs of this action and reasonable attorney's fees.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff Brianna Fultz asks the Court to enter judgment against Defendants, jointly and severally, for actual damages; liquidated or statutory damages where the law allows; reasonable attorney's fees; costs; pre-judgment and post-judgment interest; and all other relief the Court finds just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

Respectfully submitted,

McGONAGLE JOHNSON, LLC
301 NE Mulberry Street–Suite 204
Lee's Summit, Missouri 64086
816-221-2222

By: ___________________________________
Jarrett Johnson, Missouri Bar No. 42481
jj@mcgonaglejohnson.com
Attorney for Plaintiff Brianna Fultz